UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------- X

LIDIA M. ORREGO,                                             20-CV-03361 (SJB)(AYS)

               Plaintiff,

            -against-


KEVIN KNIPFING, *Employer, also known as Kevin James*; STEPHANIEANNA JAMES-KNIPFING, *Employer, also known as Steffiana de la Cruz*; OLD WESTBURY EDDIE LLC, *Company/Payroll owner Kevin Knipfing*; OLD WESTBURY LLC, *Unknown Entity under registration in NY State*, STEVE SAVITSKY, *Business Manager, Old Westbury LLC*; and TERESA A. ZANTUA

             Defendants.
--------------------------------------------------------------------------- X

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

**GORDON REES SCULLY MANSUKHANI, LLP**
ATTORNEYS FOR DEFENDANTS
ONE BATTERY PARK PLAZA, 28TH FLOOR
NEW YORK, NEW YORK 10004
PHONE: (212) 269-5500
FAX: (212) 269-5505

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT .......................................................................................................................... 2

    I.    STANDARD................................................................................................................ 2

    II.    PLAINTIFF'S § 1981 AND NYSHRL HOSTILE WORK ENVIRONMENT CLAIMS FAIL AGAINST DEFENDANTS .......................... 5

        A.    Standard Applicable to Section 1981 and NYSHRL Hostile Work Environment Claims ................................................................................. 5

        B.    Plaintiff Hostile Work Environment Claim against Ms. Zantua Fail as A Matter of Law. ................................................................................... 7

            1.    Ms. Zantua Was Neither an Employer, Employee, nor Plaintiff's Supervisor. .................................................................. 7

            2.    Ms. Zantua's Alleged Conduct Does Not Suffice to Establish a Hostile Work Environment Claim............................. 10

        C.    Plaintiff's § 1981 and NYSHRL Hostile Work Environment Claims against the Knipfings and Old Westbury Fail .............................. 16

    III.    PLAINTIFF'S § 1981 AND NYSHRL RETALIATION CLAIMS AGAINST THE KNIPFINGS AND OLD WESTBURY FAIL........................... 19

    IV.    PLAINTIFF SHOULD BE DEEMED A VEXATIOUS LITIGANT. ................. 21

CONCLUSION..................................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
239 F.3d 456 (2d Cir. 2001)..................................................................................... 3

*Alvarado v. Mount Pleasant Cottage Sch. Dist.*,
404 F. Supp. 3d 763 (S.D.N.Y. 2019)....................................................................... 5

*Alvarado v. United Hospice, Inc.*,
631 F. Supp. 3d 89 (S.D.N.Y. 2022)....................................................................... 19

*Aslanidis v. United States Lines, Inc.*,
7 F.3d 1067 (2d Cir. 1993)........................................................................................ 4

*Baptiste v. City Univ. of New York*,
680 F. Supp. 3d 415 (S.D.N.Y. 2023)....................................................................... 9

*Barbosa v. Continuum Health Partners, Inc.*,
716 F. Supp. 2d 210 (S.D.N.Y. 2010)..................................................................... 13

*Brown v. CSX Transportation, Inc.*,
No. 11-CV-00999(LGF), 2015 WL 13745695 (W.D.N.Y. Apr. 20, 2015),
*report and recommendation adopted,* 155 F. Supp. 3d 265 (W.D.N.Y. 2016) ........................ 8

*Cadet v. All. Nursing Staffing of New York, Inc.*,
632 F. Supp. 3d 202 (S.D.N.Y. 2022)..................................................................... 17

*Celotex v. Catrett*,
477 U.S. 317 (1986)................................................................................................... 3

*Chick v. Cty. of Suffolk*,
546 Fed.Appx. 58 (2d Cir. 2013)............................................................................. 16

*Cohane v. NCAA*,
612 Fed. Appx. 41 (2d Cir. 2015)............................................................................. 3

*Coppola v. Bear Stearns & Co.*,
499 F.3d 144 (2d Cir. 2007)..................................................................................... 3

*Cruz v. Reiner*,
11 Civ. 2131 (BMC), 2013 WL 5676303 (E.D.N.Y. Oct. 16, 2013) ....................................... 3

*Cusatis v. City of Niagara Falls*,
No. 19-CV-1536S, 2023 WL 4826894 (W.D.N.Y. July 27, 2023) ....................................... 17

ii

*De La Pena v. Metro. Life Ins. Co.*,
   953 F. Supp. 2d 393 (E.D.N.Y. 2013) ................................................................................. 8

*Doe v. Bloomberg, L.P.*,
   143 N.Y.S. 3d 286................................................................................................... 9, 18

*Doe*,
   167 N.E.3d at 455 ................................................................................................... 18

*Duch v. Jakubek*,
   588 F.3d 757 (2d Cir. 2009)................................................................................... 16

*Eliahu v. Jewish Agency for Israel*,
   919 F.3d 709 (2d Cir. 2019)................................................................................... 22

*Everett v. New York City Dep't of Educ.*,
   No. 21 Civ. 7043 (JPC), 2023 WL 5629295 (S.D.N.Y. Aug. 31, 2023) ................................. 9

*Feingold v. New York*,
   366 F.3d 138 (2d. Cir. 2004)................................................................................... 3

*Georges v. Peters*,
   581 F. App'x 80 (2d Cir. 2014)............................................................................... 19

*Gorman v. Covidien, LLC*,
   146 F. Supp. 3d 509 (S.D.N.Y. 2015)...................................................................... 18

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993).................................................................................................. 5

*Hicks v. IBM*,
   44 F.Supp.2d 593 (S.D.N.Y.1999) ........................................................................... 8

*In re Martin–Trigona*,
   737 F.2d 1254 (2d Cir. 1984)................................................................................. 21

*Isbell v. City of New York*,
   316 F. Supp. 3d 571 (S.D.N.Y. 2018)...................................................................... 6

*Iwachiw v. N.Y.S. Dept. of Motor Vehicles*,
   396 F.3d 525 (2d Cir. 2005)................................................................................... 21

*Jeffreys v. City of New York*,
   426 F.3d 549 (2d Cir. 2005)................................................................................. 4, 11

*Jordan v. United Cerebral Palsy of New York City, Inc.*,
   No. 12-CV-5715 (DLI)(RLM), 2016 WL 9022502 (E.D.N.Y. Mar. 31, 2016),
   *aff'd,* 682 F. App'x 48 (2d Cir. 2017), *as amended* (Mar. 10, 2017)...................................... 13

*Knight v. U.S. Fire Ins. Co.*,
   804 F.2d 9 (2d Cir. 1986) ................................................................................................. 4

*Kulick v. Gordon Property Group, LLC*,
   No. 23 Civ. 9928 (KPF), 2025 WL 448333 (S.D.N.Y. Feb. 7, 2025) .................................... 9

*Lau v. Meddaugh*,
   229 F.3d 121,123 (2d Cir. 2000) ...................................................................................... 21

*Leizerovici v. HASC Ctr., Inc.*,
   No. 17-CV-5774 (BMC), 2018 WL 1115348 (E.D.N.Y. Feb. 27, 2018) ............................... 16

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015) ............................................................................................... 5

*Lu v. Chase Inv. Servs. Corp.*,
   412 Fed. Appx. 413 (2d Cir. 2011) ..................................................................................... 3

*Makhsudova v. City of New York*,
   No. 20 CIV. 10728 (KPF), 2022 WL 1571152 (S.D.N.Y. May 18, 2022) .............................. 6

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ......................................................................................................... 19

*McHenry v. Fox News Network, LLC*,
   510 F. Supp. 3d 51 (S.D.N.Y. 2020) .................................................................................... 6

*Nezaj v. PS450 Bar & Rest.*,
   719 F. Supp. 3d 318 (S.D.N.Y. 2024) ................................................................................ 18

*Onofre Polanco v. 34th St. P'ship, Inc.*,
   724 F. Supp. 2d 420 (S.D.N.Y. 2010) ................................................................................ 14

*Pandozy v. Tobey*,
   335 Fed.Appx. 89 (2d Cir. 2009) ...................................................................................... 22

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
   743 F.3d 11 (2d Cir.2014) ............................................................................................. 4, 11

*Rojas v. Roman Catholic Diocese of Rochester*,
   660 F.3d 98 (2d Cir.2011) ............................................................................................. 4, 11

*Safir v. United States Lines, Inc.*,
   792 F.2d 19 (1986) ...................................................................................................... 21, 22

*Scott v. Harris*,
   550 U.S. 372 (2007) ........................................................................................................... 3

*Smith v. N.Y. & Presbyterian Hosp.*,
    440 F. Supp. 3d 303 (S.D.N.Y. 2020).................................................................................... 19

*Tolbert v. Smith*,
    790 F.3d 427 (2d Cir. 2015)..................................................................................... 5, 14

*Torre v. Charter Commc'ns, Inc.*,
    493 F. Supp. 3d 276 (S.D.N.Y. 2020).................................................................................. 19

*Weinstock v. Columbia Univ.*,
    224 F.3d 33 (2d Cir. 2000)........................................................................................ 3

*Wheeler v. Praxair Surface Techs., Inc.*,
    694 F. Supp. 3d 432 (S.D.N.Y. 2023)................................................................................. 6

*Whidbee v. Garzarelli Food Specialties, Inc.*,
    223 F.3d 62 (2d Cir.2000), *aff'd*, 552 F. App'x 98 (2d Cir. 2014)........................................... 8

*Xiang v. Eagle Enterprises, LLC*,
    No. 19 Civ. 1752 (PAE), 2020 WL 248941 (S.D.N.Y. Jan. 16, 2020)..................................... 9

*Zann Kwan v. Andalex Grp. LLC*,
    737 F.3d 834 (2d Cir. 2013).................................................................................... 21

**Statutes**

N.Y. Exec. Law § 296(1)(a)........................................................................................7

N.Y. Exec. Law § 296(6) ............................................................................................8

**Rules**

Fed. R. Civ. P. 56(c)(2)...............................................................................................1

## PRELIMINARY STATEMENT

An unsuspecting family with young children unknowingly hires an unhinged nanny who, after the termination of her employment for multiple demonstrable legitimate reasons, goes on an unending campaign of harassment against the family and several others who have ever had any connection whatsoever – direct or indirect – to the family. This sounds like the plot of a horror movie. Unfortunately, however, that is what Defendants and several many others have had to deal with from Plaintiff for the last seven years.

As the Court is aware, based on the Court's prior decision on Defendants' motion to dismiss Plaintiff's Amended Complaint, dated September 30, 2021, the only claims left remaining to be adjudicated are: (1) Plaintiff's claims against Ms. Zantua for race and national origin-based hostile work environment under § 1981 and the NYSHRL; (2) Plaintiff's § 1981 and the NYSHRL race and national origin-based hostile work environment claims against the Knipfings and Old Westbury, based on Ms. Zantua's alleged conduct; and (3) Plaintiff's claims for retaliation against the Knipfings under § 1981 and the NYSHRL.

Plaintiff's § 1981 and NYSHRL hostile work environment claims against Ms. Zantua fail because Ms. Zantua was neither Plaintiff's employer, an employee of the Knipfings, let alone Plaintiff's supervisor. Moreover, and in any event, even if Ms. Zantua could be subject to liability for Plaintiff's § 1981 and the NYSHRL hostile work environment claims against her, those claims would fail nonetheless because the evidence in the record cannot support a finding that Plaintiff was subjected to a hostile work environment.

As to Plaintiff's § 1981 and NYSHRL hostile work environment claims against the Knipfings and Old Westbury, those claims also fail for a couple of reasons. First, since the evidence in the record cannot support a finding that Plaintiff was subjected to a hostile work environment by Ms. Zantua in the first instance, Plaintiff's § 1981 and NYSHRL hostile work

1

environment claims against the Knipfings and Old Westbury also fail.  Second, even if Plaintiff were able to establish that Ms. Zantua subjected her to a hostile work environment, the record does not support a finding that the Knipfings (and Old Westbury) either provided no reasonable avenue for complaint or knew of the alleged harassment but did nothing about it.

As to Plaintiff's § 1981 and NYSHRL retaliation claims against the Knipfings (and Old Westbury), those claims also fail because the Knipfings had multiple legitimate non-retaliatory reasons for terminating Plaintiff's employment, and Plaintiff cannot point to any evidence to demonstrate that retaliatory animus was the but-for cause of the decision to terminate her employment.

Accordingly, for all the reasons discussed in greater detail below, Defendants must be granted summary judgment with respect to all of Plaintiff's remaining claims, with prejudice. Additionally, due to Plaintiff's deplorable and harassing conduct against the Defendants and several others, Plaintiff should be deemed a vexatious litigant and sanctioned, including, but not limited to, being required to pay Defendants' costs and attorney's fees incurred in connection with this motion for summary judgment.

## FACTUAL BACKGROUND

For a full statement of the material facts as to which there are no genuine issues to be tried, the Court is respectfully referred to Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1, dated August 8, 2021 ("Defendants' Rule 56.1 Statement"). Defendants' Rule 56.1 Statement, along with all the terms defined therein, is hereby incorporated into this memorandum of law.

## ARGUMENT

### I.     STANDARD

The purpose of summary judgment is to isolate and terminate claims that are factually

unsupported so as to avoid costly and unnecessary trials. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Cohane v. NCAA*, 612 Fed. Appx. 41 (2d Cir. 2015). "'[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to other areas of litigation.'" *Lu v. Chase Inv. Servs. Corp.*, 412 Fed. Appx. 413, 415 (2d Cir. 2011) (summ. order) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)). Indeed, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Feingold v. New York*, 366 F.3d 138, 149 (2d. Cir. 2004 (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)).

Summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2). In that regard, a particular fact will be deemed "material" only if its existence or non-existence would "affect the outcome of the suit under governing law." *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007) (citation and internal quotations omitted). Likewise, an issue will only be considered "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 148 (citation and internal quotations omitted). Thus, for factual issues to be considered genuine, they must have a real basis in the record. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). "The requirement of detecting a genuine issue of fact finds substance in the principle that despite some evidence in opposition to a summary judgment motion, if 'no reasonable jury could have believed' the opponent's version of the events, summary judgment is appropriate." *Cruz v. Reiner*, 11 Civ. 2131 (BMC), 2013 WL 5676303, at *2 (E.D.N.Y. Oct. 16, 2013) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

3

In order to withstand a motion for summary judgment, the plaintiff must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with specific and admissible evidence showing a genuine issue for trial on each element of her claim.  *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993).  "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment.  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).  Moreover:

> While it is undoubtedly the duty of [ ] courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account.

*Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citation omitted); *see also Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 105 (2d Cir.2011) (stating that the district court was entitled to assess the plaintiff's factual assertions when the plaintiff had only submitted an affidavit and her deposition testimony in opposition to the summary judgment motion, whereas the defendant submitted documentary evidence that contradicted the plaintiff's assertions); *accord Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 22 (2d Cir.2014) (stating that summary judgment in *Jeffreys* and *Rojas* was appropriate where the plaintiffs' cases relied entirely on their own testimony and the plaintiffs had made statements that were inconsistent and contradicted by evidence in the record).

When the foregoing standard is applied to the undisputed material facts in this matter, it becomes clear that Defendants are entitled to summary judgment on all of Plaintiff's remaining claims.

## II.  PLAINTIFF'S § 1981 AND NYSHRL HOSTILE WORK ENVIRONMENT CLAIMS FAIL AGAINST DEFENDANTS

### A.  Standard Applicable to Section 1981 and NYSHRL Hostile Work Environment Claims

"To establish a hostile work environment claim under Title VII [or] §1981 … a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "It is axiomatic that a plaintiff also must show that the hostile conduct occurred because of a protected characteristic."  *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (citation omitted).

The standard for analyzing hostile work environment claims "has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  *Littlejohn*, 795 F.3d at 321 (internal quotations omitted).  In determining whether a plaintiff suffered a hostile work environment, courts must consider the totality of the circumstances, including (1) frequency of the conduct, (2) severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

"As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  *Tolbert*, 790 F.3d at 439.  "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."  *Id.*  Moreover, "[w]hen analyzing severity, a court must distinguish between merely offensive or boorish conduct and conduct that is sufficiently severe as to alter the conditions of employment."  *Alvarado v.*

5

*Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 780-81 (S.D.N.Y. 2019) (internal quotations omitted). Importantly, "[h]ostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018).

With respect to hostile work environment claims under the NYSHRL, "[t]he New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which was to render the standard for claims [under the NYSHRL more liberal than their federal counterparts]." *Makhsudova v. City of New York*, No. 20 CIV. 10728 (KPF), 2022 WL 1571152, at *5 (S.D.N.Y. May 18, 2022). "These amendments were signed into law by Governor Andrew Cuomo on August 12, 2019, and apply to claims that accrue on or after the effective date of October 11, 2019." *Id*. Accordingly, hostile work environments claims under the NYSHRL that are based on events occurring prior to October 11, 2019, are still judged by the same standard as their federal counterparts. *See, e.g., Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 452 (S.D.N.Y. 2023) ("for a plaintiff whose [NYSHRL hostile work environment] claim is based on conduct before October 11, 2019, the Title VII standard still applies."); *Makhsudova*, 2022 WL 1571152 at *10 (applying federal standard to Plaintiff's pre-amendment NYSHRL hostile work environment claim); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 65, 68-69 (S.D.N.Y. 2020) ("the 2019 NYSHRL amendments are not retroactive" and, thus, hostile work environments claims "under the NYSHRL [accruing prior to October 11, 2019] are judged by the same standard as their federal counterparts.").

Here, Plaintiff's employment with the Knipfings was terminated in November 2018 and, thus, her NYSHRL hostile work environment claims are also judged by the same standard as her

6

§ 1981 claims.

**B.**  **Plaintiff Hostile Work Environment Claim against Ms. Zantua Fail as A Matter of Law.**

      **1.**  **Ms. Zantua Was Neither an Employer, Employee, nor Plaintiff's Supervisor.**

Ms. Zantua, who is Ms. Knipfing's sister and the Knipfings' children's aunt, was never employed by the Knipfings, let alone Plaintiff's supervisor.  Indeed, Plaintiff testified that she does not know whether the Knipfings ever paid Ms. Zantua to perform any work.  *See* Defendants' 56.1 Statement at ¶¶ 22.  Plaintiff also testified that: (1) Plaintiff was neither required to nor did she ever submit her timesheets to Ms. Zantua at any time during her employment with the Knipfings; (2) Plaintiff does not know whether Ms. Zantua had the ability to change Plaintiff's position; (3) Plaintiff does not know whether Ms. Zantua had the ability to change Plaintiff's salary; (4) Plaintiff does not know whether Ms. Zantua had the ability to suspend Plaintiff's employment; (5) Plaintiff does not know whether Ms. Zantua had the ability to demote Plaintiff; and (6) Plaintiff does not know whether Ms. Zantua had the ability to terminate Plaintiff's employment.  *See id.* at ¶¶ 20-21.

Plaintiff's allegation in her Amended Complaint, that Ms. Zantua was her supervisor, is patently false and flatly contradicted by the record, including Plaintiff's own deposition testimony. Indeed, in Plaintiff's Workers' Compensation Application she filed almost a year after the Knipfings terminated her employment, she specifically identified only Mr. Testa, but not Ms. Zantua, as her supervisor.  *Id.* at ¶ 23.  This, standing alone, is dispositive on the issue of whether Ms. Zantua was Plaintiff's supervisor.  Moreover: (1) Mr. Testa, per Plaintiff's own testimony, was the Knipfings' "house manager" during Plaintiff's employment; (2) Mr. Testa coordinated with Leslie's Helpers and Plaintiff to arrange for Plaintiff's trial day at the Knipfing's home before she was hired; (3) Mr. Testa, together with Ms. Uzcategui, interviewed Plaintiff before Plaintiff was hired; (4) Mr. Testa was  the person identified in Plaintiff's Job Offer Letter as the Knipfings'

designee to whom Plaintiff had to submit her daily work time sheets; (5) Mr. Testa provided

Plaintiff with various documents to sign prior to Plaintiff commencing her employment with the

Knipfings; (6) Mr. Testa, together with Ms. Knipfing, met with Plaintiff on October 31, 2018, to

advise Plaintiff that moving forward Plaintiff would be only performing the duties of a nanny, and

no longer both nanny and housekeeper; and (7) Mr. Testa, and Ms. Knipfing, were the ones to

whom Plaintiff submitted her 11-02-2018 Complaint. *Id.* at ¶¶ 2, 8-9, 12-13, 75, 78. These facts,

in addition to Plaintiff's Workers' Compensation Application, definitively establish that Mr. Testa,

not Ms. Zantua, was Plaintiff's supervisor.

As an initial matter, Defendants could not find any cases addressing, let alone holding, that

a third-party individual who is neither an employer nor employee can be subject to individual

liability for a hostile work environment claim under § 1981 or NYSHRL.

With respect to individual liability of employees under § 1981 generally, "[t]he major

distinction between claims brought under [§] 1981 and Title VII is that [§] 1981 provides for

individual liability on the part of non-employers. *De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp.

2d 393, 409 (E.D.N.Y. 2013) (citing *Whidbee v. Garzarelli Food* Specialties*, Inc.,* 223 F.3d 62,

75 (2d Cir.2000)), *aff'd,* 552 F. App'x 98 (2d Cir. 2014). However, "**[i]n each of the cases that**

**have allowed individual liability under § 1981, the individuals have been supervisors** who

were personally involved in the discriminatory activity." *Whidbee v. Garzarelli Food Specialties,*

*Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (emphasis added) (quoting *Hicks v. IBM,* 44 F.Supp.2d 593,

597 (S.D.N.Y.1999)). *See also Brown v. CSX Transportation, Inc.*, No. 11-CV-00999(LGF), 2015

WL 13745695, at \*11 (W.D.N.Y. Apr. 20, 2015) ("individual liability under § 1981 is not without

limits. In each of the cases that have allowed individual liability under § 1981, the individuals have

8

been supervisors who were personally involved in the discriminatory activity.") (internal quotation marks omitted), report and recommendation adopted, 155 F. Supp. 3d 265 (W.D.N.Y. 2016).

As to the NYSHRL, that statue states, "[i]t shall be an unlawful discriminatory practice for an **employer** or licensing agency, because of an individual's … race … to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a) (emphasis added).  Accordingly, employees cannot be subject to primary liability for hostile work environment under the NYSHRL.  *See Kulick v. Gordon Property Group, LLC*, No. 23 Civ. 9928 (KPF), 2025 WL 448333, at *9, 11 (S.D.N.Y. Feb. 7, 2025) (dismissing the plaintiff's NYSHRL discrimination and hostile work environments claims as against the individual defendants on the basis that the "NYSHRL permits liability ... *by employers only*") (emphasis in original); *Doe v. Bloomberg, L.P.*, 143 N.Y.S. 3d 286, 291 (the NYSHRL "does not render employees liable as individual employers.").

While the NYSHRL does not permit primary liability against employees, it does contain an "aiding and abetting" provision that "make[s] it unlawful 'for any person to aid, incite, compel or coerce the doing of any of the acts forbidden under [the NYSHRL], or attempt to do so." *Xiang v. Eagle Enterprises, LLC*, No. 19 Civ. 1752 (PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020) (quoting N.Y. Exec. Law § 296(6)).  Notably, however, "**an individual cannot aid and abet his or her own violation [of the NYSHRL]**." *Baptiste v. City Univ. of New York*, 680 F. Supp. 3d 415, 427 (S.D.N.Y. 2023).  *See also Everett v. New York City Dep't of Educ.*, No. 21 Civ. 7043 (JPC), 2023 WL 5629295, at *13 (S.D.N.Y. Aug. 31, 2023) ("an individual cannot be subject to liability for aiding and abetting an employer's primary violation if that violation consisted merely of the individual's own conduct").

Here, Ms. Zantua was neither Plaintiff's employer, Plaintiff's supervisor, nor was she even

9

employed by the Knipfings.  Accordingly, she is not subject to individual liability under § 1981 or the NYSHRL.  Moreover, even if Ms. Zantua had been an employee, she could not be held individually liable under the NYSHRL for aiding and abetting her own alleged conduct.

For all of the foregoing reasons, Plaintiff's hostile work environments claims under § 1981 and the NYSHRL, as against Ms. Zantua, fail as a matter of law.

### 2. Ms. Zantua's Alleged Conduct Does Not Suffice to Establish a Hostile Work Environment Claim.

Putting aside the fact that Ms. Zantua cannot be subject to individual liability for Plaintiff's hostile work environment claims under § 1981 or the NYSHRL, Zantua's alleged conduct does not rise to the requisite level to establish a hostile work environment.

As a preliminary matter, Plaintiff's testimony and evidence in support of her hostile work environment claims are inconsistent.  When Plaintiff was asked during her deposition as to any conduct Ms. Zantua engaged in that Plaintiff found offensive based on Plaintiff's Hispanic race and/or Paraguayan national origin, she testified as follows:

> Q: Did Ms., Zantua, at any time during your employment, do anything or engage in any conduct that you believed to be harassment based on your race and/or Paraguayan national origin?
>
> A: Yes
>
> Q: What did she do?
>
> A: She would send text messages calling me stupid Mexican. She would send messages with a deformed face. **I would have to see the diary with all the text messages because there are many text messages**. She told me that Skylar Testa and her made fun of how I spoke.  She also sent me text messages saying that I could only speak in English. For example, if the kid hit me, she would say no, she's Mexican, she eats a lot of corm. And my bones are useless, that's why it doesn't matter if he hits you. She said that Mexicans eat a lot of corn, and that's why my bones are useless, that's why I felt a lot of pain. One time I asked her why did she call me Mexican if I'm from Paraguay and she said, "You're all Mexican to me. There's no difference."
>
> Q: Anything else you can recall other than what you've testified to?

10

A: About what, specifically?

Q: Anything that Ms. Zantua did or said that you believed to be harassment based on your race and/or national origin.

A: **It's in all the diaries and all the text messages and the recordings.**

\*       \*       \*

Q: Okay. Anything else you can recall, as you sit here, other than what you've testified to?

A: **No, just that. The rest is in evidence**.

*See* Defendants' 56.1 Statement at ¶ 24.

Plaintiff's purported diary, which Plaintiff largely relies upon (*id.* at ¶ 43), and the circumstances surrounding its creation, are suspect to say the least.  First, Plaintiff testified that she had never kept a diary prior to her employment with the Knipfings; none of the other persons for whom Plaintiff worked as a nanny prior to her employment with the Knipfings are celebrities. *Id*. at ¶¶ 45-52.  When Plaintiff was asked during her deposition when the entries in her diary were made, she testified that: (1) during her employment she would "make notes on any papers that [she] had[;]" and (2) after making her 11-02-2018 Complaint, she typed her diary based on those notes, but only after Mr. Knipfing asked her for any evidence she had in support of her 11-02-2018 Complaint.  *Id*. at ¶ 44.  When Plaintiff was further asked during her deposition where those supposed notes are, she claimed not to know.  *Id*. Given that more than one government agency – *i.e.*, the WCB and the NCCPS – have found Plaintiff not to be a credible source (*see id.* at ¶¶ 121, 123, 134), Plaintiff's self-serving version of events cannot be believed absent irrefutable supporting proof.  In circumstances where a plaintiff relies almost exclusively on their own testimony or affidavit – or, here, Plaintiff's Diary – much of which is contradictory and incomplete, courts are permitted to make an assessment of the plaintiff's account in deciding the defendant's motion for summary judgment.  *See, e.g., Jeffreys*, 426 F.3d at 554; *Rivera*, 743 F.3d at 22; *Rojas*,

11

660 F.3d at 105.

But even assuming, without conceding, that Plaintiff's Diary is credible and is entitled to be given any weight, the following are the only entries in Plaintiff's Diary that reference alleged discriminatory comments made by Ms. Zantua:

- **May 5, 2018:** Ms. Zantua allegedly complained about the Knipfings hiring nannies who only speak Spanish, about why Mexicans work for children whose families speak English, and allegedly also said that non-English speaking individuals should not work in this country. *See* Defendants' 56.1 Statement at ¶ 56.

- **September 5, 2018:** While Plaintiff was giving one of the Knipfings' children a bath, Ms. Zantua allegedly told the child that **the child** did not have to speak in Spanish. On "several prior occasions," Ms. Zantua allegedly hit the wall when Plaintiff spoke to that particular child in Spanish. *Id*. at ¶ 57.

- **September 6, 2018:** In response to Plaintiff telling Ms. Zantua that Plaintiff was happy Ms. Zantua apologized to Ms. Uzcategui for an argument Ms. Zantua and Ms. Uzcategui had, Ms. Zantua allegedly responded that she never apologized to that the "Mexican" (referring to Ms. Uzcategui). *Id*. at ¶ 58.

- **September 8, 2018:** Ms.. Zantua allegedly argued with a Panera Bread employee because the employee did not speak English well. Ms. Zantua subsequently told Plaintiff that Ms. Zantua had told the Panera employee what she always tells Plaintiff. *Id*. at ¶ 59.

- **September 15, 2018:** Ms. Zantua allegedly complained about why her sister, Ms. Knipfing, hires people who speak Spanish. *Id*. at ¶ 60.

- **September 20, 2018:** In response to Plaintiff calling Ms. Zantua "big", by which Plaintiff supposedly meant "tall," Ms. Zantua took offense and allegedly: (1) called Plaintiff a "stupid Mexican"; (2) told Plaintiff that Plaintiff was not in Plaintiff's country, and that she (Ms. Zantua) did not care about "you Mexicans"; and (3) told Plaintiff that "big" is not a nice word in America, and that everyone in Mr. Knipfing's family is big, so she (Ms. Zantua) did not want one of the Knipings' children repeating that word to the family. *Id*. at ¶ 61.

- **October 5, 2018:** Plaintiff had a text message exchange with Ms. Zantua, in which Plaintiff stated, among other things, "you know I'm stupid Spanish from Paraguay or Mexico as you always said to me." Ms. Zantua then responded with a text message stating, "OMG [Oh My God] I said Mexico when you said something about me [ ] lol." Plaintiff then responded, "I never said anything about you lol[.]" *Id*. at ¶ 61; *see also*, *id*. at ¶ 34.

12

- **October 19, 2018:** Ms. Zantua allegedly told Plaintiff that Plaintiff does not pronounce Ms. Zantua's name correctly, and that Plaintiff should pronounce it as if it were in English, not Spanish. Plaintiff's entry also vaguely mentions Ms. Zantua "always [making] racist comments." *Id*. at ¶ 63.

The foregoing eight (8) entries of May 5, September 5, September 6, September 8, September 15, September 20, October 5, and October 19, 2018, are the only entries in Plaintiff's Diary in which Ms. Zantua is alleged to have made discriminatory comments. However, the September 5, 2018, entry pertains to Ms. Zantua allegedly telling one of the Knipfings' children, not Plaintiff, that the child did not have to speak Spanish. As to the alleged September 8, 2018, interaction between Ms. Zantua and a Panera Bread employee, Plaintiff's Diary indicates that Ms. Zantua told Plaintiff about the alleged interaction, which strongly suggests that Plaintiff did not even personally witness the interaction. As to the October 5, 2018, text message exchange, Ms. Zantua's response during that text message exchange – "OMG I said Mexico when you said something about me" – appears to refer to the aforementioned September 20, 2018, interaction between Plaintiff and Ms. Zantua, during which Ms. Zantua apparently took offense to Plaintiff calling her "big."

Accordingly, at first glance, the only interactions set forth in Plaintiff's Diary that could potentially serve as support for Plaintiff's hostile work environment claims are those set forth in the May 5, September 6, September 15, September 20, and October 19, 2018, entries. However, courts have consistently held that an English-only policy, in and of itself, does not create a hostile work environment. *See, e.g., Jordan v. United Cerebral Palsy of New York City, Inc.*, No. 12-CV-5715 (DLI)(RLM), 2016 WL 9022502, at *7 (E.D.N.Y. Mar. 31, 2016) (collecting cases in which courts have found that English-only policies are not discriminatory nor do they constitute a hostile work environment), *aff'd,* 682 F. App'x 48 (2d Cir. 2017), *as amended* (Mar. 10, 2017); *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 220 (S.D.N.Y. 2010) ("the enforcement

13

of an English-only policy, in and of itself, does not constitute a hostile work environment on the basis of race."); *Onofre Polanco v. 34th St. P'ship, Inc.*, 724 F. Supp. 2d 420, 427 (S.D.N.Y. 2010) (occasional requirements of non-English speaking employees to speak English found not to be sufficiently severe or pervasive to establish a hostile work environment). Moreover, and in any event, given that Plaintiff is bilingual in English and Spanish (*see* Defendants' 56.1 Statement at ¶ 9), Plaintiff cannot point to any evidence to demonstrate that Ms. Zantua's comments about speaking English altered the conditions of Plaintiff's employment.

Therefore, Plaintiff also cannot establish her hostile work environments claims based on her interactions with Ms. Zantua on May 5, September 15, or October 19, 2018, leaving only the interaction on September 20, 2018. With respect to that September 20, 2018 interaction, per Plaintiff's Diary, Ms. Zantua was upset by Plaintiff calling her "big," and in response allegedly called Plaintiff a "stupid Mexican." Such an isolated remark is insufficient to establish a hostile work environment claim, as a matter of law. *Tolbert*, 790 F.3d at 439 ("Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness.").

In addition to Plaintiff's Diary, Plaintiff points to her text messages with Ms. Zantua in support of her hostile work environment claims. *See* Defendants' 56.1 Statement at ¶¶ 25-34. However, nowhere in those text messages does Ms. Zantua make any comments referencing race or national origin, other than the October 5, 2018 text message exchange already discussed above in which Ms. Zantua stated, "OMG I said Mexico when you said something about me." Nowhere in the text messages between Plaintiff and Ms. Zantua, generally, does Ms. Zantua call Plaintiff a Mexican, let alone a "stupid Mexican"; nowhere in the text messages between Plaintiff and Ms. Zantua does Ms. Zantua ever mention corn, state that Plaintiff or Mexicans eat a lot of corn, or in any way reference Plaintiff's bones; nowhere in the text messages between Plaintiff and Ms.

14

Zantua does Ms. Zantua state any words to the effect of, "You're all Mexican to me. There's no difference"; and nowhere in the text messages between Plaintiff and Ms. Zantua does Ms. Zantua mock Plaintiff's accent.

Moreover, there is only one text message – on September 1, 2018 – in which Ms. Zantua appears to tell Plaintiff to speak only in English. *Id*. at ¶ 31. However, as discussed above, Plaintiff cannot establish her hostile work environment claims based on Ms. Zantua telling her to speak English.

Plaintiff's text messages with Ms. Zantua also include text messages in which Ms. Zantua, in jest, attached various images, including images of Plaintiff's face. *Id*. at ¶¶ 28-33. However, all such text messages and images were completely facially neutral – no pun intended – and unrelated in any way to Plaintiff's race and/or national origin. Additionally, while Plaintiff testified during her deposition that she could not recall whether she and Ms. Zantua ever joked around with each other, there are several instances in the text messages between the two of them in which they appear to be joking around with each other. *Id*. at ¶¶ 40-41.

Notably, although Plaintiff secretly recorded various conversations she had with others during her employment with the Knipfings (*id.* at ¶¶ 92, 105-106), she claims to have recorded only one conversation with Ms. Zantua, which did not even involve or contain Ms. Zantua making any discriminatory or harassing comments. *Id*. at ¶ 107.

To sum up, Plaintiff's credibility issues notwithstanding, for all the reasons discussed above, only the alleged September 20, 2018 interaction with Ms. Zantua could arguably serve as a basis for Plaintiff's hostile work environment claims. However, that isolated interaction is not sufficiently serious to establish a hostile work environment, especially given that Ms. Zantua was responding to what she believed to be an insult from Plaintiff (*i.e.*, Plaintiff calling Ms. Zantua

15

"big").  In any event, even if the Court were to take all of the interactions discussed above (based on Plaintiff's Diary and Plaintiff's text messages with Ms. Zantua), in which Ms. Zantua is specifically alleged to have made offensive racial comments or told Plaintiff not to speak Spanish, such alleged incidents taken together still amount to isolated incidents that are insufficient to establish a hostile work environment claim.  Indeed, Plaintiff's Diary references just eight (8) episodic incidents during her nine (9) months of employment during which Ms. Zantua is alleged to have made offensive comments.

Accordingly, even if the law permitted Ms. Zantua to be subject to individual liability for Plaintiff's hostile work environments claims, which the law does not, for all of the reasons discussed above Plaintiff's hostile work environment claims against Ms. Zantua would still fail.

### C.    Plaintiff's § 1981 and NYSHRL Hostile Work Environment Claims against the Knipfings and Old Westbury Fail

In order to establish a hostile work environment claim against an employer, in addition to establishing a hostile work environment in the first instance, a plaintiff must establish "that there is a specific basis for imputing the conduct creating the hostile work environment to the employer."  *Chick v. Cty. of Suffolk*, 546 Fed.Appx. 58, 59 (2d Cir. 2013); *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009). As discussed above in Section II.B., Plaintiff in the first instance cannot establish her hostile work environment claims based on the evidence in the record. Accordingly, her hostile work environment claims against the Knipfings and Old Westbury also fail.  Even if Plaintiff were able to establish her hostile work environment claims based on Ms. Zantua's alleged conduct, Plaintiff's hostile work environment claims against the Knipfings and Old Westbury fail nonetheless.

"[T]he Second Circuit has not yet decided whether an employer may be held liable under a hostile work environment theory for the conduct of non-employees." *Leizerovici v. HASC Ctr.,*

16

*Inc.*, No. 17-CV-5774 (BMC), 2018 WL 1115348, at *9 (E.D.N.Y. Feb. 27, 2018) (citation omitted). However, some district courts in the Second Circuit have held that "the rules for imputing conduct by non-employees and conduct by non-supervisory co-workers are the same." *See, e.g.*, *Cadet v. All. Nursing Staffing of New York, Inc.*, 632 F. Supp. 3d 202, 229 (S.D.N.Y. 2022). Thus, "the employer is liable only if it was negligent in controlling working conditions." *Id.* (internal quotation marks omitted). "To prove negligence in this context, a plaintiff must show that the employer has either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Id.* (internal quotation marks omitted). *See also* Cusatis v. City of Niagara Falls, No. 19-CV-1536S, 2023 WL 4826894, at *7 (W.D.N.Y. July 27, 2023) ("To extend liability for harassment by a non-employee to an employer, Plaintiff must demonstrate that the employer failed to provide a reasonable avenue for the complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment, yet failed to take appropriate remedial action[.]") (internal quotation marks omitted).

It is irrefutable that Plaintiff had multiple reasonable avenues for complaint, as she could have sent a text message or email to Mr. Knipfing, Ms. Knipfing, or Mr. Testa to complain about Ms. Zantua's alleged harassing conduct. The fact that Plaintiff did send her 11-02-2018 Complaint via email to Ms. Knipfing and Mr. Testa (*see* Defendants' 56.1 Statement at ¶ 78) further establishes that Plaintiff did in fact have a reasonable avenue for complaint.

As to whether the Knipfings knew or alleged harassment, Plaintiff testified at her deposition that she did not recall whether prior to her 11-02-2018 Complaint she had ever informed Ms. Knipfing about any alleged harassment by Ms. Zantua, and would need to review her diary. *Id.* at ¶ 82. However, nowhere in Plaintiff's Diary is there any mention of Plaintiff ever complaining to Ms. Knipfing about any alleged discriminatory or harassing treatment of Plaintiff

17

by Ms. Zantua's. *Id.* at ¶ 84. Plaintiff also testified that at no time prior to her 11-02-2018 Complaint did she ever inform Mr. Knipfing about any alleged harassment by Ms. Zantua. *Id.* at ¶ 85. Although Plaintiff testified that she had spoken to Mr. Testa about Ms. Zantua's alleged harassment prior to her 11-02-201 Complaint, when asked for details regarding any such conversation(s) with Mr. Testa, she testified she would have to check her diary. *Id.* at ¶ 86. However, nowhere in Plaintiff's Diary is there any mention of Plaintiff ever complaining to Mr. Testa about Ms. Zantua's alleged harassment of Plaintiff. *Id.* at ¶ 87. Moreover, despite Plaintiff's penchant for secretly recording conversations, she has no recorded conversations with Mr. Testa in which she complained about Ms. Zantua. Had Plaintiff complained to Mr. Knipfing, Ms. Knipfing, or Mr. Testa prior to November 2, 2018, about any alleged harassment by Ms. Zantua, the Knipfings would have commenced a prompt investigation, as evidenced by their response to Plaintiff's 11-02-2018 Complaint. *Id.* at ¶¶ 88-102.

Based on the foregoing, even if Plaintiff could establish based on the record that Ms. Zantua's alleged conduct created a hostile work environment, Plaintiff's hostile work environment claims against the Knipfings and Old Westbury still fail.[1]

---

[1] Defendants could not find any cases in which a court held that an employer may be held liable under a hostile work environment theory under the NYSHRL for the conduct of non-employees. In any event, even if this Court were to apply the NYSHRL standard for imputing an employee's conduct to an employer, "the state statute has a stricter standard for imputing liability to an employer." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521 (S.D.N.Y. 2015). Specifically, "liability for an employee's discriminatory conduct may only be imputed to an employer under the NYSHRL if the employer became a party to it by encouraging, condoning, or approving it." *Id.* (internal quotation marks omitted). *See also Doe*, 167 N.E.3d at 455 (same). Therefore, for the same reasons discussed above, Plaintiff's NYSHRL hostile work environment claims against the Knipfings and Old Westbury also fail. Moreover, and in any event, even if Plaintiff could establish her NYSHRL hostile work environment claim, the Knipfings could not be held individually liable because the Knipfings were not Plaintiff's "employer" as defined under the NYSHRL. [A]s the New York Court of Appeals clarified … in 2021, where a corporate entity is the plaintiff's employer, an individual affiliated with the entity cannot himself qualify as the employer, [and] [t]hat is so even if the individual holds a high post at the employer or owns the entity." *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 329 (S.D.N.Y. 2024) (citing *Doe* 143 N.Y.S. 3d at 291-92). Here, Old Westbury was the corporate entity that employed Plaintiff.

### III.    PLAINTIFF'S § 1981 AND NYSHRL RETALIATION CLAIMS AGAINST THE KNIPFINGS AND OLD WESTBURY FAIL

Retaliation claims under both § 1981 and the NYSHRL are analyzed under the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 116-117 (S.D.N.Y. 2022). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action. *Id.* at 117 (internal quotation marks omitted). "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, [non-retaliatory] reason existed for its action." *Id.* (internal quotation marks omitted). "If the employer demonstrates a legitimate, non-[retaliatory] reason, then the burden shifts back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation. *Id.* (internal quotation marks omitted). Importantly, a plaintiff at this final step of the analysis must demonstrate that retaliation was a "but-for" cause of the adverse action, not simply a substantial or motivating factor in the employer's decision. *See, e.g., Georges v. Peters*, 581 F. App'x 80, 81 (2d Cir. 2014) ("but for" causation standard applies to Section 1981 retaliation claims); *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 288–89 (S.D.N.Y. 2020) (analyzing a motion to dismiss plaintiff's NYSHRL retaliation claim under but-for causation standard); *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 340 n.22 (S.D.N.Y. 2020) (collecting cases).

The only protected activity Plaintiff engaged in during her employment with the Knipfings was her 11-02-2018 Complaint, of which the Knipfings were aware. Accordingly, Plaintiff satisfies the first two prongs of her *prima facie* retaliation case. Moreover, Plaintiff's employment

19

was ultimately terminated on November 27, 2018. *See* Defendants' 56.1 Statement at ¶ 103. Accordingly, Plaintiff also satisfies the third prong of her *prima facie* case. As to the first prong – whether there was a causal connection between the protected activity and that adverse action – the only evidence to which Plaintiff could point to satisfy that prong is the temporal proximity between her 11-02-2018 Complaint and her termination on November 27, 2018.

However, the Knipfings can articulate multiple legitimate non-retaliatory reasons for terminating Plaintiff's employment. First, after Plaintiff made her 11-02-2018 Complaint, and during the investigation into same, the Knipfings learned that Plaintiff, among other things, had been secretly recording conversations with others, and had been taking unauthorized pictures and videos. *See id.* at ¶¶ 89-92, 104-108. Such conduct was in clear violation of the Non-Disclosure Agreement Plaintiff signed at the outset of her employment. *See id*. at ¶¶ 14-18. Second, during the investigation into Plaintiff's 11-02-2018 Complaint, she told the Rydan investigators who interviewed her that she did not want to continue working for the Knipfings if Ms. Uzcategui – Ms. Uzcategui, who had been employed as a nanny before Plaintiff was even hired, and who interviewed Plaintiff – remained employed. *See id*. at ¶¶ 1, 9, 104, 109-110. Third, and perhaps most concerning for the Knipfings (as would be the case for any parents with young children), in Plaintiff's 11-02-2018 Complaint she made allegations about the Knipfings' minor children being mistreated and physically abused by Ms. Uzcategui. *See id*. at ¶ 81. However, when the Rydan investigators interviewed Plaintiff, Plaintiff confirmed that there was no physical abuse taking place. *See id*. at ¶ 102. This is not surprising given Plaintiff's deposition testimony that prior to her 11-02-2018 Complaint she had never informed the Knipfings about any abuse of any of their children.

Each of the foregoing reasons, standing alone, constitutes a legitimate non-retaliatory

20

reason for the decision to terminate Plaintiff's employment, and Plaintiff cannot establish that

retaliatory animus was the "but-for" cause of the decision to terminate her employment. Moreover,

the fact that Plaintiff's employment was terminated shortly after her 11-02-2018 Complaint is of

no consequence because it is well settled that temporal proximity, alone, is insufficient to

withstand a motion for summary judgment. See, e.g., *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d

834, 847 (2d Cir. 2013) ("[t]emporal proximity alone is insufficient to defeat summary judgment

at the pretext stage.").

Based on the foregoing, Plaintiff's § 1981 and NYSHRL retaliation claims against the

Knipfings and Old Westbury fail.

## IV.    PLAINTIFF SHOULD BE DEEMED A VEXATIOUS LITIGANT.

"The district courts have the power and the obligation to protect the public and the efficient

administration of justice from individuals who have a 'history of litigation entailing 'vexation,

harassment and needless expense to [other parties]' and 'an unnecessary burden on the courts and

their supporting personnel.'" *Lau v. Meddaugh*, 229 F.3d 121,123 (2d Cir. 2000) (quoting *In re

Martin–Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984)).

In determining whether to restrict a vexatious litigant's future access to the courts, the

Second Circuit has instructed courts to consider the following five factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious,
> harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g.,
> does the litigant have an objective good faith expectation of prevailing?; (3) whether the
> litigant is represented by counsel; (4) whether the litigant has caused needless expense to
> other parties or has posed an unnecessary burden on the courts and their personnel; and (5)
> whether other sanctions would be adequate to protect the courts and other parties.

*Iwachiw v. N.Y.S. Dept. of Motor Vehicles*, 396 F.3d 525, 529 (2d Cir. 2005) (quoting *Safir v.

United States Lines, Inc.*, 792 F.2d 19, 24 (1986)). "Ultimately, the question the court must answer

is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the

judicial process and harass other parties." *Safir*, 792 F.2d at 24.   While "pro se litigants, in many cases, are entitled to special solicitude, [courts have] not altogether excuse[d] frivolous or vexatious filings by *pro se* litigants." *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 715 (2d Cir. 2019) (internal quotations omitted).   *See also Pandozy v. Tobey*, 335 Fed.Appx. 89, 92 (2d Cir. 2009) (summary order) (affirming district court's labeling of *pro se* plaintiff as a "vexatious litigant" because "the record makes clear that [he] ha[d] filed numerous actions in state and federal court" and because he "ha[d] already been sanctioned by other courts, who, like the district court, rightly determined that he was a vexatious litigant").

Here, the Court need not conduct a detailed analysis of the five factors to be considered in determining whether to deem an individual a vexatious litigant; the record here unequivocally and easily satisfies each of the five factors.   *See* Defendants' 56.1 Statement at ¶¶ 118-178. Accordingly, Plaintiff should be deemed a vexatious litigant and sanctioned, including, but not limited to, being required to pay Defendants' attorney's fees and costs incurred in connection with Defendants' motion for summary judgment, for Plaintiff's frivolous and harassing conduct throughout the course of this and other matters.

## CONCLUSION

In light of the foregoing, Defendants respectfully request that their motion for summary judgment be granted in its entirety, that Plaintiff's Amended Complaint be dismissed with prejudice, and that the Court grant such other and further relief it deems just and proper.

Dated: New York, New York
        August 8, 2025

22

GORDON REES SCULLY MANSUKHANI , LLP

By:  */s/ Kuuku Minnah-Donkoh*
Kuuku Minnah-Donkoh, Esq.
1 Battery Park Plaza, 28th Floor
New York, New York 10004
Telephone: 212-269-5500
kminnahdonkoh@grsm.com
*Attorneys for Defendants*

23