UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
LIDIA M. ORREGO,

                    Plaintiff,

           v.

KEVIN KNIPFING, et al.,

                   Defendants.
---------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
20-CV-3361-SJB-AYS

**BULSARA, United States District Judge:**

Before the Court are cross-motions for summary judgment on Plaintiff Lidia M. Orrego's claims against Defendants Kevin Knipfing, Stephanieanna Knipfing, Teresa Zantua, Old Westbury Eddie LLC, and Old Westbury LLC ("Defendants").  Orrego, who worked for the Knipfings as a nanny and housekeeper for several months in 2018, brings claims under the New York State Human Rights Law ("NYSHRL") and 42 U.S.C. § 1981 for hostile work environment and retaliation.  Orrego alleges that Zantua—the aunt of the children she cared for—harassed her with repeated racist remarks, and after she complained to her employer, she was terminated.  For the reasons explained below, Defendants' motion for summary judgment is granted, and Orrego's motion is denied.  And for the reasons explained, including Orrego's vexatious and harassing litigation conduct, the Court imposes a permanent filing injunction on Orrego.

STANDARD FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

"A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "This is true even though the court [is] presented with cross-motions for summary judgment; each movant has the burden of presenting evidence to support its motion that would allow the district court, if appropriate, to direct a verdict in its favor." *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir. 1988). "When both parties have moved for summary judgment, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Alta Partners, LLC v. Getty Images Holdings, Inc.*, 165 F.4th 141, 149 (2d Cir. 2026) (quotation omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c)(1)(A). Alternatively, it may show that "the materials cited do not establish the

absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b). In both instances, the party must support its position by citing to admissible evidence from the record. *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded." *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013

3

WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)).  The court may not grant summary judgment based on a fact in a Rule 56.1 statement — even if undisputed — not supported by admissible evidence.  *E.g., Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence).  The Court must also disregard conclusory denials that lack citations to admissible evidence.  *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.  They should contain factual assertions, with citation to the record.  They should not contain conclusions[.]*"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003).  Also, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted."  Loc. Civ. R. 56.1(c).  The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits.  *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere

conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

## FACTUAL BACKGROUND

The Court finds the following facts—drawn from the pleadings, the parties' respective Rule 56.1 statements, and supporting affidavits and exhibits attached thereto—are undisputed unless otherwise noted.

The Knipfings, Kevin ("Mr. Knipfing") and Stephanieanna ("Ms. Knipfing"), have four children, and hired Orrego to work as a nanny in February 2018. (Defs.' Rule 56.1 Statement ("Defs.' 56.1 Stmt."), Dkt. No. 221-1 ¶¶ I(3), 11; Pl.'s Rule 56.1 Resp. ("Pl.'s 56.1 Resp."), Dkt. No. 224-2 ¶¶ I(3), 11).[1] At that time, the Knipfings had a staff of five that they employed through their company, Old Westbury Eddie, LLC.[2] (*Id.* ¶¶ I(7), 1; Defs.' 56.1 Stmt. ¶¶ I(7), 1). The staff included: Skylar Testa, the house

---

[1] The numbering of Defendants' 56.1 Statement restarts at Section II. Accordingly, the Court notes paragraphs from Section I as, for example, ¶ I(3). All references to numbered paragraphs without a section label directly preceding that number correspond to the continuous numbering that begins at Section II.

[2] Orrego named both Old Westbury Eddie, LLC, and Old Westbury, LLC, as defendants seemingly because the termination letter she was issued came from "Old Westbury, LLC," but she acknowledges there is no such company registered in New York. (*See* Pl.'s Rule 56.1 Statement ("Pl.'s 56.1 Stmt."), Dkt. No. 226-3 ¶ 17). Defendants respond that their company, which was "incorporated in New York to serve as the employer of record for the Knipfings' domestic employees," is "Old Westbury Eddie, LLC," and omitting "Eddie" from the termination letter was a typographical error. (Defs.' Rule 56.1 Resp. ("Defs.' 56.1 Resp."), Dkt. No. 227-3 ¶ 17). The Court refers to the entity generally as "Old Westbury," and all parties have briefed the motion understanding there is only a single entity defendant.

manager, Rebecca Uzcategui, the primary nanny, Cristina Coimbra, the housekeeper, Gerardo Guarino, the chef, and Shannon Sha, who homeschooled the Knipfings' children.  (*Id.* ¶¶ 1–6; Pl.'s 56.1 Resp. ¶¶ 1–6).

Before beginning her employment, Orrego signed a non-disclosure agreement ("NDA").  (Defs.' 56.1 Stmt. ¶¶ 13–18).[3]  The NDA generally prohibits employees from discussing confidential information—which the NDA broadly defines to include, among other things, personal information about the Knipfings and their employees—with any third party absent Mr. Knipfing's express written permission, subject to several exceptions, such as to report possible violations of federal or state law.  (*Id.* ¶¶ 15–17).  Under the NDA, photographs pertaining to the Knipfings were also deemed confidential information, and a separate provision forbade taking photos or videos of the Knipfings without express permission.  (*Id.* ¶¶ 15, 18).

---

[3] Orrego says she denies these statements in her 56.1 Response, but the bases she offers do not appear to contest the heart of the statements.  For example, Orrego denies that she ever received any documents to sign prior to her employment, on the ground that her text messages with Testa about the hiring process, that she supplied to the Court, do not show that she received any documents to sign.  (Pl.'s 56.1 Resp. ¶ 13).  She adds a comment, describing that text message exhibit: "NDA Never Received."  (*Id.*).  The crux of her contestation, more clearly in her explanations for her denials of the descriptions of the NDA, seems to be that she was never given a complete copy of the NDA before or after signing.  (*Id.* ¶¶ 14–18 (noting "NDA require to have copy" and "I never get a copy of the NDA")).  But Defendants provided a complete copy of an NDA with Orrego's signature.  (*See* NDA, attached to Defs.' Mot. as Ex. F, Dkt. No. 221-8).  And even if the Court were to not consider the NDA, there are other legitimate, non-retaliatory reasons for her termination, which entitle Defendants to summary judgment.  *See infra* pp. 20–22.

At some point, Orrego also assumed some housekeeping duties for the Knipfings—the date is disputed, but is not material.[4]  On October 31, 2018, Ms. Knipfing and Testa informed Orrego that she would no longer be a nanny and housekeeper—she would only serve as a nanny.  (*Id.* ¶ 75; Pl.'s 56.1 Resp. ¶ 75).  Two days later, on November 2, 2018, Orrego sent Ms. Knipfing and Testa an email raising allegations that Uzcategui, the primary nanny, had been harassing Orrego and mistreating the children, and that Zanuta, Ms. Knipfing's sister, had been harassing Orrego with racially discriminatory comments.  (*Id.* ¶¶ I(4), 78–81; Defs.' 56.1 Stmt. ¶¶ I(4), 78–81).  Testa forwarded the email to Mr. Knipfing the same day, and on November 6, 2018, Mr. Knipfing met with Orrego to discuss her complaints and asked her to send him any evidence she had, which she did over the next week.  (*Id.* ¶¶ 88–92; Pl.'s 56.1 Resp. ¶¶ 88–92).  Testa informed Orrego on November 11, 2018, that the Knipfings had hired investigators to look into the allegations she raised, and those investigators met with and interviewed Orrego the following day.  (*Id.* ¶ 99; Defs.' 56.1 Stmt. ¶¶ 98–99).[5]

After the investigation concluded, Orrego was informed on November 27, 2018 that her employment was terminated.  (*Id.* ¶ 103; Pl.'s 56.1 Resp. ¶ 103).  The

---

[4] Orrego contends at one point that she was hired as a nanny *and* housekeeper, and at another that she began housekeeping duties in March 2018.  (Pl.'s 56.1 Resp. ¶¶ 68, 70).  Defendants assert that Orrego asked to also serve as a housekeeper around July 2018, when the Knipfings were looking for a second housekeeper.  (Defs.' 56.1 Stmt. ¶¶ 70–72).

[5] Though it is not detailed in the parties' 56.1 Statements, the Court notes that it appears from an audio transcription submitted by Orrego that when she met with Mr. Knipfing on November 6, 2018, she was told that she would not be working, but would be paid, until the investigation resolved.  (Audio Transcription, attached to Pl.'s Opp'n as Ex. 17, Dkt. No. 224-20 at 7).

termination letter gave multiple reasons, including: 1) breach of the NDA; 2) a statement Orrego made in the course of the investigation that she was unwilling to continue working with Uzcategui; and 3) the conclusion that Orrego made false statements in her initial complaint. (*Id.* ¶ 104; Defs.' 56.1 Stmt. ¶ 104; Termination Letter, attached to Defs.' Mot. as Ex. X, Dkt. No. 221-26).

Orrego then initiated this lawsuit on July 23, 2020, (Compl., Dkt. No. 1), and filed the Amended Complaint on August 17, 2020, (Am. Compl., Dkt. No. 8). The Amended Complaint named as Defendants the Knipfings, Old Westbury Eddie LLC, Old Westbury LLC, Steve Savitsky, and Zantua. (*Id.* at 2–3, 9–10). She brought claims for race discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981, the NYSHRL, New York City Human Rights Law ("NYCHRL"), and New York Labor Law ("NYLL"). (*Id.* at 4, 11). She also asserted claims under state criminal laws for forgery and perjury. (*Id.* at 4).

The Court dismissed Orrego's claims asserted under the NYCHRL, NYLL, and state criminal laws, and dismissed her discrimination claims brought under § 1981 and the NYSHRL. (Mem. & Order dated Sep. 30, 2021, Dkt. No. 30 at 1). The Court also dismissed the retaliation claim against Zantua, and all claims against Savitsky. (*Id.*). The parties agree that the remaining claims are: 1) Orrego's § 1981 and NYSHRL hostile work environment claims based on race and national origin against the Knipfings, Zantua, and Old Westbury; and 2) Orrego's § 1981 and NYSHRL retaliation claims

against the Knipfings and Old Westbury.  (Defs.' 56.1 Stmt. ¶ 117; Pl.'s 56.1 Resp. ¶ 117).[6]

Defendants' fully briefed motion for summary judgment was filed on the Court's docket on October 3, 2025.  (*See* Defs.' Mem. in Supp. of Mot. for Summ. J. dated Aug. 8, 2025 ("Defs.' Mot."), Dkt. No. 221-54; Pl.'s Mem. in Opp'n to Defs.' Mot. dated Aug. 12, 2025 ("Pl.'s Opp'n"), Dkt. No. 224-3; Defs.' Mem. in Reply dated Oct. 3, 2025 ("Defs.' Reply"), Dkt. No. 222).  Orrego's fully briefed motion was filed that same day.[7]  (*See* Pl.'s Mem. in Supp. of Mot. for Summ. J. dated Aug. 8, 2025 ("Pl.'s Mot."), Dkt. No. 226-4; Defs.' Mem. in Opp'n to Pl.'s Mot. dated Sep. 12, 2025 ("Defs.' Opp'n"), Dkt. No. 227-2; Pl.'s Mem. in Reply dated Oct. 3, 2025 ("Pl.'s Reply"), Dkt. No. 228-3).

---

[6] This case was first reassigned from the Honorable Gary R. Brown to the Honorable Joan M. Azrack on May 18, 2023, and then to the undersigned on January 31, 2025.

[7] Orrego submitted USB flash drives with her motion papers.  (*See* Notice dated Oct. 6, 2025, Dkt. No. 229).  However, the Court cannot access or review the contents of flash drives.  And Orrego was expressly informed of the Court's protocol for submission of large electronic files in the event they cannot be filed on ECF.  (Order dated July 8, 2025 ("The Court has received from Plaintiff multiple requests to submit electronic evidence.  The protocol for submission of large electronic files set forth in the Court's Individual Practices § II.D, however, is only to be utilized for trial or motion practice where exhibits are appropriate for the Court's consideration of the issues involved, such as summary judgment.  Both sides are therefore informed that, outside of such limited practice, documents should be filed only on ECF.")).  According to a letter Orrego submitted, it appears the flash drives contain: the pictures and videos Orrego took while employed by the Knipfings, social media accounts of other employees and Mr. Knipfing, the reports Orrego sent to Mr. Knipfing, and a worker's compensation recording.  (Pl.'s Letter dated Oct. 3, 2025, Dkt. No. 226 at 3–4).  From the descriptions, this evidence appears largely duplicative of material submitted on the Court's docket, though the Court is unable to review it.

DISCUSSION

## I.   Hostile Work Environment

"Section 1981 and NYSHRL[8] hostile work environment claims are governed by the same substantive standard."  *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 6 (2d Cir. 2017).  "To establish a prima facie case of hostile work environment, the plaintiff must show that the discriminatory harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that a specific basis exists for imputing the objectionable conduct to the employer." *Id.* (quotation omitted).  While § 1981 permits a plaintiff to sue individuals in addition to employers, *id.*, the NYSHRL generally does not permit individual liability for employment discrimination, *see Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 329 (S.D.N.Y. 2024) ("[A]s the divided New York Court of Appeals clarified . . . , where a corporate entity is the plaintiff's employer, an individual affiliated with the entity cannot himself qualify as the employer . . . even if the individual holds a high post at the employer or owns the entity." (citing *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 457–58 (2021))) (collecting cases).

---

[8] Because the complained-of conduct occurred prior to October 11, 2019—when amendments to the NYSHRL made certain standards more lenient—Orrego's NYSHRL hostile work environment claim is analyzed under the Title VII standard.  *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 452 (S.D.N.Y. 2023) ("[F]or a plaintiff whose claim is based on conduct before October 11, 2019, the Title VII standard still applies."); *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 274 (S.D.N.Y. 2024) (explaining that before the amendment, "the pleading standards were generally the same for Title VII, section 1981, and NYSHRL claims" (quotation omitted)).  Orrego does not suggest otherwise.

A.      **Claim Against Zantua**

"[I]ndividuals may be held liable under § 1981." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000). But in those instances "the individuals have been supervisors who were personally involved in the discriminatory activity." *Id.* (quotation omitted).

A supervisor "is empowered by the employer 'to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113–14 (2d Cir. 2015) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013)) (applying *Vance*'s "supervisor" definition under Title VII to a § 1981 claim). "In other words, a supervisor is an individual empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control." *Id.* at 114 (quotation omitted); *e.g.*, *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 91 (2d Cir. 2019) (explaining that "to raise a triable issue of fact" as to whether a defendant was a supervisor, plaintiff "had to adduce admissible evidence" showing that her employer had authorized defendant "to do more than oversee her day-to-day performance of assigned tasks"—that is, "to take *tangible employment actions* that could *inflict direct economic injury*").

Defendants contend that Zantua was not Orrego's supervisor, and in fact, was never employed by the Knipfings. (Defs.' Mot. at 7). And they point to several pieces of evidence, including Orrego's own admissions, to demonstrate as much. Defendants

11

point to Orrego's deposition testimony that she never submitted her timesheets to Zantua, that she did not know whether Zantua had any authority to suspend, demote, or terminate her employment, or change her salary, and that she did not know whether the Knipfings ever paid Zantua to perform any work. (Defs.' 56.1 Stmt. ¶¶ 19–22; *see also* Dep. of Lidia Orrego ("Orrego Dep."), attached to Defs.' Mot. as Ex. A, Dkt. No. 221-3 at 141:20-25, 152:5–154:2). Defendants also point to Orrego's Worker's Compensation claim filed in September 2019, in which she identifies Testa—not Zantua—as her supervisor. (Defs.' 56.1 Stmt. ¶ 23). Orrego does not meaningfully contest much of this evidence; the evidence she does contest is unsupported by the record portions she cites. Orrego states that Zantua "is the second shift nanny to help with 4 kids," but she cites and provides no evidence in support of that assertion. (Pl.'s 56.1 Resp. ¶ 22). And as for naming Testa as her supervisor in her Worker's Compensation material, she responds that supervisor and house manager mean the same thing to her, but provides no record evidence in support. (*Id.* ¶ 23). Orrego argues that Zantua had a supervisory role because she "direct[ed] Plaintiff's tasks," but again points to no evidence that could support that contention.[9] (Pl.'s Opp'n at 9).

Thus, given the undisputed evidence identified by Defendants, the Court concludes that Zantua cannot be considered a supervisor for purposes of Orrego's

---

[9] In light of Orrego's pro se status, the Court has considered the factual assertions and arguments regarding Zantua's supervision that Orrego makes in support of her own summary judgment motion, which are slightly more detailed than those opposing Defendants' motion. For example, Orrego there claims that Zantua "order[ed] Plaintiff to take photographs and videos of the Knipfings' children." (Pl.'s 56.1 Stmt. ¶¶ 2, 4). But no documents cited actually support the assertion, and in any event, directing tasks like taking photos does not demonstrate Zantua's supervisory liability or role.

hostile work environment claim, and accordingly, the claim against Zantua is dismissed. *E.g.*, *Bentley*, 935 F.3d at 91–92 (finding no supervisory authority where the defendant could not hire, fire, promote, demote, or set compensation or work hours); *Lekettey v. City of New York*, 637 F. App'x 659, 662 (2d Cir. 2016) (finding that the plaintiff presented no facts from which the court could find that defendant was "empowered by the employer to take tangible employment actions against" the plaintiff).

## B.     Claims Against the Knipfings and Old Westbury

Under federal law governing hostile work environment claims, the same standard for imputing harassment by non-supervisory co-workers to employers applies to imputing harassment by non-employees, with the qualification that the court "will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (quotation omitted) (applying the test for imputing harassment by co-workers where plaintiff, team manager of the football team, sued the university for the hostile work environment created by football players). That is, "the employer will be held liable only for its own negligence, and the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Id.* (quotation omitted). "In determining the appropriateness of an employer's response," courts "look to whether the response was immediate or timely and appropriate in light of the circumstances,

13

particularly the level of control and legal responsibility [the employer] has with respect to [the employee's] behavior." *Id.* (quotation omitted).

Although Zantua was not Orrego's supervisor, she was a family member of Orrego's employer—and Orrego worked in the home of her employer, taking care of their children and assisting around the house. Thus, like in *Summa*, the Court applies the test for imputing harassment by co-workers—even if Zantua is not an employee at all—given the degree of control that the Knipfings presumably had over Zantua's conduct in their own home, with their own children. *See id.* But even under this approach, the Knipfings and Old Westbury may only be held liable for non-supervisor misconduct if they "provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Whidbee*, 223 F.3d at 72 (quotation omitted).

Orrego had multiple avenues to raise a complaint—by texting or emailing the Knipfings or Testa—and the fact that she did in fact email Testa and Ms. Knipfing with her complaint on November 2, 2018 establishes the existence and feasibility of that process. (Defs.' Mot. at 17; Defs.' 56.1 Stmt. ¶ 80; Pl.'s 56.1 Resp. ¶ 80). Defendants also submitted Orrego's deposition testimony, where she says she does not remember having "raised any issues or any of the conduct[] by Ms. Zantua" to Ms. Knipfing prior to the November 2, 2018 email, and says she would have to check her diary. (Defs.' 56.1 Stmt. ¶ 83[10]; Orrego Dep. at 185:14-20). That diary, both parties agree, does not mention

---

[10] In her responsive 56.1 Statement, Orrego qualifies her admission of this statement with the additional fact that she once mentioned Zantua's harassment to Ms. Knipfing, but the only response she received was that Ms. Knipfing was not interested. (Pl.'s 56.1 Resp. ¶ 83). But Orrego presents no evidence or details to support that vague contention, so the Court cannot credit it.

Orrego ever complaining about Zantua's harassment to Ms. Knipfing.  (Defs.' 56.1 Stmt. ¶ 84; Pl.'s 56.1 Resp. ¶ 84).

Orrego does not allege that there was no avenue to complain, but she argues that the Knipfings knew of Zantua's conduct through two complaints[11] she lodged — one to Testa on October 16, 2018, and the other being the November 2, 2018 email she sent to Testa and Ms. Knipfing — but that they took no corrective action.  (Pl.'s Mot. at 9).  The evidence Orrego points to regarding the October 16, 2018 report is a transcription of an audio recording of a conversation between her and Testa, where almost every line is largely marked "inaudible," and the Court can discern no evidence of a report to Testa of Zantua's misconduct.  (Audio Transcription, attached to Pl.'s Opp'n as Ex. 8, Dkt. No. 224-11).  That leaves the November 2, 2018 report, for which there is no genuine dispute that the Knipfings took prompt action, including: immediately forwarding Orrego's complaint to Mr. Knipfing, who met with Orrego four days later to discuss her complaints, requested Orrego send whatever evidence she had, and then retained a private security company to investigate the allegations the following week.  (Defs.' 56.1 Stmt. ¶¶ 88–102; Pl.'s 56.1 Resp. ¶¶ 88–102).

"The standard for reviewing the appropriateness of an employer's response to co-worker harassment is essentially a negligence one, and reasonableness depends among other things on the gravity of the harassment alleged."  *Summa*, 708 F.3d at 125

---

[11] Orrego seems to claim that she was "demot[ed] from nanny to housekeeper on August 15, 2018, following earlier complaints" — but none of the cited evidence supports the contention that earlier complaints existed or were the cause of termination.  (Pl.'s Opp'n at 11).

(quotation omitted).  The Knipfings immediately met with Orrego and hired an external investigation company to evaluate her complaint, which cannot be found to be an unreasonable or inappropriate response.  *See, e.g., id.* at 125 (finding the employer's response reasonable and appropriate because it "took action at once" when misconduct was reported); *Lekettey*, 637 F. App'x at 662 ("Plaintiff's complaint alleges no facts from which it can be plausibly inferred that defendants were negligent or unresponsive to her complaints about the workplace.").  Orrego has "failed to produce evidence that [Defendants were] dilatory in [their] response," *Whidbee*, 223 F.3d at 73, and there are no other incidents where Defendants took no action in response to a complaint by Orrego; thus summary judgment is appropriate on Orrego's hostile work environment claim.

Although Orrego does not clearly make the argument, the Court separately evaluates whether the Knipfings *should* have, in the exercise of reasonable care, known about Zantua's alleged misconduct.  Uzcategui had complained about Zantua's conduct approximately one year before Orrego did.  (Pl.'s 56.1 Stmt. ¶ 33; Investigative Memo dated Nov. 21, 2018, attached to Pl.'s Mot. as Ex. 13, Dkt. No. 226-18 at 3).  The external investigation found that Uzcategui admitted "to approaching [Mr. Knipfing] with regards to the way [Zantua] was treating her," and that "things were somewhat better" after that, but then "reverted back" to how things were.  (Investigative Memo at 3).  Orrego says the Knipfings "took no corrective action," which allowed Zantua's alleged harassment to persist, including against her.  (Pl.'s 56.1 Stmt. ¶ 33).  But that mischaracterizes the report, which clearly states that conditions improved after Uzcategui made her complaint to Mr. Knipfing.  (Investigative Memo at 3).  The fact

16

that the alleged misconduct started again, after having resolved, does not automatically suggest that the Knipfings knew or should have known *Orrego* was being harassed. *E.g.*, *Summa*, 708 F.3d at 125 (finding imputation of liability improper despite multiple separate instances of harassment, since each report brought to a supervisor's attention was "dealt with quickly and in proportion to the level of seriousness of the event"); *Bentley*, 935 F.3d at 92–93 (holding that inconsistent evidence suggesting defendant had notice about harassment could not create a fact issue, and prompt investigation followed the report of allegedly hostile work environment shown by the record, so employer could not be found negligent and summary judgment was appropriate).

To summarize, Zantua's conduct cannot be imputed to the Knipfings or Old Westbury under § 1981.  The federal and state standards differ with respect to the Knipfings' and Old Westbury's liability for Zantua's alleged harassment, since she is not a supervisor, in one regard: under the NYSHRL, "[a]n employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it." *Hoit v. Cap. Dist. Transp. Auth.*, 805 F. App'x 41, 45 (2d Cir. 2020) (quotation omitted).  Because the Court finds that Zantua's conduct cannot be imputed to the other Defendants under the more relaxed federal standard, it also does not meet the NYSHRL's more rigorous requirement of encouragement or approval.

Since the Court concludes that Zantua's conduct cannot be imputed to the Knipfings or Old Westbury, it need not and does not determine whether Orrego's "showing of harassment was sufficiently severe or pervasive to constitute a hostile

17

work environment." *Summa*, 708 F.3d at 124.  Orrego's hostile work environment claim

against the Knipfings and Old Westbury is dismissed.

## II.      Retaliation

Section 1981 and NYSHRL retaliation claims are analyzed under the three-step

burden shifting framework derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973), and according to Title VII principles.  *Alvarado*, 685 F. App'x at 7.  Under that

framework, if the plaintiff establishes a prima face case of retaliation, "the defendant

must then articulate a legitimate, non-discriminatory reason for its action."  *Hernandez v.*

*Kwiat Eye & Laser Surgery, PLLC*, No. 23-7679, 2024 WL 5116365, at *1 (2d Cir. Dec. 16,

2024).  "To make out a prima facie case of retaliation, a plaintiff must make four

showings: that (1) she engaged in a protected activity; (2) her employer was aware of

this activity; (3) the employer took adverse employment action against her; and (4) a

causal connection exists between the alleged adverse action and the protected activity."

*Id.* *3 (quotation omitted).  If the defendant produces a non-retaliatory reason for the

adverse action, the plaintiff "must then prove that her protected activity was a 'but-for'

cause of her firing, which she can do by showing that [defendant's] proffered reason is

pretextual."  *Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 49 (2d Cir. 2025) (quotation

omitted); *see also Alvarado*, 685 F. App'x at 7 ("'[B]ut-for' causation does not require

proof that retaliation was the only cause of the employer's action, but only that the

adverse action would not have occurred in the absence of the retaliatory motive."

(quotation omitted)); *Ferrara v. Sterling, Inc.*, No. 23-0454, 2024 WL 485742, at *2 (2d Cir.

Feb. 8, 2024) ("[W]ith respect to causation, [plaintiff] must establish that retaliation . . .

was a 'but-for' cause of his demotion, not simply a 'substantial' or 'motivating' factor in the employer's decision." (quotation omitted)).

Defendants do not dispute that Orrego has made out a prima facie case of retaliation. There is no dispute that Orrego engaged in protected activity and that her employer was aware of it: she complained of racial discrimination to Testa and Ms. Knipfing on November 2, 2018. (Defs.' Mot. at 19; Pl.'s Opp'n at 10–11). And Orrego's employment was terminated on November 27, 2018, an adverse employment action that is close enough in temporal proximity to presumptively establish a causal connection with her protected activity. (Defs.' Mot. at 20; Pl.'s Opp'n at 11); *e.g.*, *Summa*, 708 F.3d at 128 ("[T]he combination of reasonably close temporal proximity and the particular context in this case is sufficient to infer causation in establishing a prima facie case of retaliation[.]").

Under *McDonnell Douglas*, the burden now shifts back to Defendants "to articulate some legitimate, non-retaliatory reason for the employment action." *Philbert v. N.Y.C Dep't of Educ.*, No. 24-0804, 2025 WL 3251187, at *1 (2d Cir. Nov. 21, 2025) (quotation omitted) (noting that defendants' burden here "is one of production, not persuasion" (quotation omitted)). "The plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Id.* (quotation omitted). "At the third step, the presumption of retaliation dissipates, and the plaintiff must prove that the desire to retaliate was [a] but-for cause of the challenged employment action." *Carter v. TD Bank, N.A.*, No. 23-0950, 2024 WL 2828470, at *3 (2d Cir. June 4, 2024) (quotation omitted). A plaintiff "need not prove that the employer's

stated reason was *false*"; she "need only show that the employer's stated reason—even if true or factually accurate—was not the 'real reason,' in the sense that it was not the *entire* reason due to a coexisting impermissible consideration." *Bart v. Golub Corp.*, 96 F.4th 566, 575 (2d Cir. 2024) (emphasis in original). In other words, it is the plaintiff's burden "to produce admissible evidence showing circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Id.* at 576 (quotation omitted).

Defendants have articulated multiple non-retaliatory reasons for Orrego's termination, which were also provided contemporaneously with her termination letter: 1) Orrego had been secretly recording conversations and taking unauthorized pictures and videos in violation of the NDA she signed; 2) Orrego told the outside investigators that she did not want to continue working for the Knipfings if Uzcategui remained employed; and 3) Orrego made allegations that the Knipfings' children were being physically abused by Uzcategui, but later confirmed no such abuse was taking place. (Defs.' Mot. at 20; Defs.' 56.1 Stmt. ¶¶ 104–110; Termination Letter).

Orrego makes several arguments that these proffered reasons are pretextual. *See Licinio v. New York*, No. 24-2564, 2025 WL 1693108, at *2 (2d Cir. June 17, 2025) ("To prove pretext, a plaintiff can demonstrat[e] weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." (quotation omitted)), *cert. denied*, No. 25-0587, 2026 WL 79971 (U.S. Jan. 12, 2026). Her strongest arguments challenge the reason related to her

20

supposedly unauthorized pictures and videos.  Orrego argues that the photos and videos she took were authorized by Zantua and the Knipfings, and that Ms. Knipfing was previously aware of them.  (Pl.'s Opp'n at 12).  She also asserts, in conclusory fashion, that the NDA was void and that prior employees took photos without any repercussions.[12]  (*Id.*).  In support of these arguments, Orrego produced several text messages with Ms. Knipfing in which Orrego sent photos—for example, of the children in the playroom in March 2018—to a warm reception by Ms. Knipfing.  (Text Messages, attached to Pl.'s Opp'n as Ex. 6, Dkt. No. 224-9).  But Orrego has not produced evidence that the Knipfings knew other employees had taken photos, nor does the evidence she supplied—of a few pictures shared only with Ms. Knipfing in response to questions about where the children were—support her blanket statement that the 821 photos and 172 videos she took were "authorized."  (Pl.'s Opp'n at 12).

Orrego's burden at this stage is not merely one of production.  She must persuasively show that the proffered reasons for her termination are a pretext for the true retaliatory motive.  *Philbert*, 2025 WL 3251187, at *2 (affirming grant of summary judgment where plaintiff's evidence of pretext "d[id] not provide a reasonable basis on

---

[12] "[E]vidence of disparate treatment *of similarly situated individuals* allows for the conclusion that the reasons advanced by an employer . . . are pretextual." *Summa*, 708 F.3d at 130 (emphasis added).  Orrego never alleges that the other employees who took photos were remotely similarly situated to her.  Orrego took hundreds of photos and videos, and also secretly recorded a conversation with another nanny in the presence of a third party not employed by the Knipfings, told external investigators that she did not want to keep working for the Knipfings if the other nanny remained employed, and finally, made claims of child abuse to the Knipfings and then later confirmed that no such abuse was occurring.  She has thus, not met her burden in showing that other employees that engaged in *similar conduct* were treated more favorably to permit a factfinder to conclude that the proffered rationale for her termination was pretextual.

which a jury could conclude that [defendant's] desire to retaliate against her was a but-for cause of her termination," given the other enumerated bases for firing).  But she has not done so.  She has essentially disputed the bases offered for her termination.  That, however, does not suggest that the real (or even partial) motivation for her firing was that her employer was retaliating against her for complaining about harassment in the first instance.  So, even fully crediting Orrego's contention that some photos she took seem to have been authorized by Ms. Knipfing, a reasonable factfinder still could not conclude retaliation was a but-for cause of Orrego's termination.  *See Licinio*, 2025 WL 1693108, at *2 ("The existence of a scintilla of evidence is insufficient to defeat a summary judgment motion." (quotation omitted)).[13]

As for the other non-retaliatory reasons, Orrego calls them pretextual because her complaint focused on Zantua's harassment, not Uzcategui, and because she says she did not retract her claim of child abuse, contrary to Defendants' characterization.  (Pl.'s Opp'n at 12).  These quibbles do not demonstrate Defendants' proffered reasons are without merit, let alone that they are pretextual.

"Even construing this evidence in the light most favorable" to Orrego, as this Court must, she "has failed to produce sufficient admissible evidence from which a reasonable juror could infer that the explanations given by [Defendants] were pretextual."  *Licinio*, 2025 WL 1693108, at *2 (quotation omitted); *e.g.*, *Uttarwar v. Lazard Asset Mgmt. LLC*, No. 24-1085, 2025 WL 704278, at *4 (2d Cir. Mar. 5, 2025) ("While

---

[13] Orrego's termination letter took significant issue with Orrego having recorded a conversation with Uzcategui discussing their work "in the presence of a member of the public"—a reason Orrego does not refute at all.  (Termination Letter).

temporal proximity, together with other evidence such as inconsistent employer explanations, may be enough to defeat summary judgment, Uttarwar has failed to provide evidence calling into question the legitimacy of the defendants' explanations for his termination[.]"); *Carter*, 2024 WL 2828470, at *4 ("Simply put, the evidence Carter has adduced through discovery would not allow a reasonable factfinder to find the required but-for causal connection between his complaint and his termination, despite the modest temporal proximity between the two."); *Ferrara*, 2024 WL 485742, at *3 ("Here, assuming *arguendo* that Ferrara established a *prima facie* case of retaliation, he has not set forth evidence to rebut Sterling's legitimate, nondiscriminatory reason for his demotion from district manager to store manager[.]").

Thus, after evaluating Orrego's retaliation claim under each step of the *McDonnell Douglas* framework, the Court concludes that summary judgment is appropriate, and the claim is dismissed.

### III.    Sanctions

Both parties, in their respective summary judgment motions, ask the Court to sanction the other side.  (*E.g.*, Defs.' Mot. at 22; Pl.'s Mot. at 14–15).

Orrego requests sanctions based on alleged discovery misconduct.  (Pl.'s Mot. at 14).  Her requests are largely baseless and do not warrant sanctions—for example, stating that Defendants' "depositions were evasive" and that they contained "forged

signatures." (*Id.*).  To the extent that Orrego requests leave under Rule 15(a)[14] to file a second amended complaint to account for additional damages and based on alleged discovery misconduct in this case and "ongoing abuse," largely premised on filings or determinations made years ago in other judicial or administrative proceedings that Orrego initiated, (*id.* at 9–10, 15–16), the request is denied, *e.g.*, *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (affirming denial of request to amend made "three years after the commencement of the lawsuit and several months after cross-summary judgment motions had been filed"); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (collecting cases affirming denial of leave to amend in light of delay and advanced stage of case).

Defendants ask for Orrego to be deemed a vexatious litigant and for the imposition of monetary sanctions. (Defs.' Mot. at 22).  As a preliminary matter, Defendants' request for monetary sanctions incurred with their summary judgment motion practice and Orrego's conduct in this lawsuit, (*id.*), is denied.  This particular lawsuit is not entirely frivolous: it survived a motion to dismiss and proceeded to summary judgment.

That being said, the Court previously instituted filing injunctions to prevent abusive frivolous filings.  (*See* Order dated Aug. 14, 2025, Dkt. No. 210; Order dated Sep. 16, 2025).  This is one of nine lawsuits Orrego has filed stemming from her

---

[14] Under that Rule—and since there has not been any Rule 16 scheduling order in this case—"the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'" *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).

employment with the Knipfings, and the fifth in federal court, numbers that do not begin to capture the numerous related administrative complaints she has filed with various state agencies.  (*See* Defs.' 56.1 Stmt. ¶¶ 128, 131, 138, 140, 148, 150, 152, 155). She has filed lawsuits or administrative complaints against three law firms, (*id.* ¶¶ 131, 148, 160, 163), two employers, (*id.* ¶ 144), and twelve judges (*id.* ¶¶ 127, 152, 155), as well as judicial staff, (*id.* ¶¶ 152, 155).  She has also lodged judicial complaints and sought to recuse four District and Magistrate Judges—almost every federal judge assigned to this case.  (*Id.* ¶ 171).  In this case alone, Orrego has filed twelve notices of appeal, requests for interlocutory appeals, or petitions for a writ of mandamus.  (Dkt. Nos. 152, 166, 176, 178, 206, 212, 216, 217, 219, 234, 239, 240).[15]  She has filed nineteen motions for reconsideration or vacatur of orders—including of orders denying reconsideration, (Dkt. Nos. 48, 90, 110, 113, 114, 117, 129, 131, 142, 143, 144, 145, 147, 148, 149, 150, 151, 172, 199), until she was eventually prohibited by this Court from "seeking reconsideration or a redo of prior decisions," (Order dated July 8, 2025).  With rare exception, limited to avoiding a single motion to dismiss, Orrego has not prevailed in these actions or individual motions.  And she has already been separately subject to monetary sanctions and admonishments for frivolous litigation and threatening judicial

---

[15] The latest of these—appeals from filing injunctions and recusal denials, with requests to proceed *in forma pauperis*—were recently consolidated and dismissed *sua sponte* by the Second Circuit for lack of jurisdiction.  (*See* Mandate of USCA dated May 6, 2026, Dkt. No. 243 at 2 (dismissing appeals in: 25-2225, 25-2434, 25-3217, 25-2239, 25-2437, and 25-3208)).

officers in a state court proceeding.[16]  Orrego has also engaged in a pattern of initiating judicial misconduct complaints, sending emails to the judges of this court, including the Chief District Judge, and bombarding the Clerk's Office and chambers of judges with phone calls and filings, behaviors that are not evident from the face of the dockets of her cases, but demonstrate why the Court is obligated to enter an injunction in the case.

This Court has already instituted filing injunctions in Orrego's open cases in this District, after multiple warnings, because it found "Plaintiff has abused her ability to file papers with the Court," including by "filing repetitive motions on issues that have previously been denied."  (Order dated Aug. 14, 2025, Dkt. No. 210 at 2).  After that injunction, Orrego "filed multiple applications seeking leave to file additional motions and/or open new cases" that "not only violate the filing injunction, but are unnecessarily duplicative material."  (Order dated Sep. 16, 2025).  As a result, the Court prohibited Orrego from making any further filings in her open cases and from using the pro se portal, absent further order of the Court.  (*Id.*).  The Court noted that it would lift

---

[16] Defendants included a transcript of proceedings from one of Orrego's state court cases, in which she was fined $ 2,500 for a frivolous letter that intimidated and threatened an expert witness in the case.  (*See* Defs.' 56.1 Stmt. ¶ 129).  In imposing the sanction, the court was required to remove Orrego from the courtroom for disobeying court orders, and stated on the record to her: "You have attempted to intimidate me, you've harassed me, you've harassed my staff[.]"  (*Id.*).  That court also determined that "there may be criminal conduct that arises from the contents of [Orrego's] letter," and referred it to the district attorney to investigate.  (*Id.*).

In a recent letter, Defendants separately drew the Court's attention to the fact that Orrego just initiated yet another state court lawsuit against Defendants' counsel, Savitsky, and others, which she served on May 1, 2026.  (Defs.' Letter dated May 5, 2026, Dkt. No. 242 at 1–2).  Defendants also noted a March 24, 2026 social media post by Orrego directed at Defendants, their lawyers, the undersigned, Magistrate Judge Shields, and several other public officials, saying "[s]omething very bad is going to happen."  (*Id.* at 2).

the injunction following resolution of all pending motions, to permit Orrego to object,

appeal, seek reconsideration, or make any pre-trial filings.  (*Id.*).

In deciding whether to impose an anti-filing injunction, the Second Circuit has

identified the following factors for consideration:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714 (2d Cir. 2019) (quotation omitted).

It is plain from the above recitation—and the litigation history that has been

chronicled at length in Defendants' Rule 56.1 Statement, (*see* Defs.' 56.1 Stmt. ¶¶ 118–

78)—that all factors weigh in favor of imposing a filing injunction, *e.g.*, *Zappin v.*

*Comfort*, No. 23-7363, 2024 WL 5001624, at *3 (2d Cir. Dec. 6, 2024) ("Given that other

sanctions have proven ineffective at protecting the courts and the parties, it was not an

abuse of discretion for the district court to enter a pre-filing injunction here.");

*Immerso v. U.S. Dep't of Lab.*, No. 20-4064, 2022 WL 17333083, at *2 (2d Cir. Nov. 30, 2022)

(affirming bar against further filings or initiating new proceedings in the Eastern

District absent leave of the court).  Although Orrego is currently pro se, she has been

27

assisted by counsel at various stages in this litigation and others, and there is "no basis to afford [her] the latitude usually granted to *pro se* litigants."[17]  *Eliahu*, 919 F.3d at 715.

While filing injunctions are only warranted by "extraordinary circumstances," that bar is met here.  *Id.* at 714 (quotation omitted).  Orrego is enjoined from initiating future actions in the Eastern District of New York.

CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is granted, and Orrego's motion for summary judgment is denied.  Orrego's pending motion for leave to appeal *in forma pauperis*, (Dkt. No. 238), is denied for the reasons set forth in the Court's December 5, 2025 Order, and the pending premotion conference request, (Dkt. No. 232), is denied as moot.

The present filing injunction is lifted solely for the purpose of filing any notice of appeal.  Aside from filings related to her appeal, Orrego is enjoined from further filings in this case, and from initiating future actions in the Eastern District of New York absent

---

[17] As noted above, Orrego has fired and sued several law firms that represented her in related matters.  And in this case, while the Court initially declined to appoint Orrego pro bono counsel, the Court did ultimately appoint counsel for Orrego, (Order dated Nov. 16, 2021), but she requested their removal within a matter of months, and ultimately opted to proceed pro se, (Order dated Apr. 19, 2022, Dkt. No. 52).

a Court order.[18]  The Clerk of Court is directed to distribute this memorandum and

order to all Clerk's Office personnel as appropriate.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   May 8, 2026
        Central Islip, New York

---

[18] To eliminate the need to write a decision every time Orrego makes a frivolous filing, the Clerk of Court is directed to open a miscellaneous case entitled "In re Orrego," and to file a copy of this Order under that docket number.  The matter is then to be administratively closed.  Any future filings by Orrego, including any motion for reconsideration, shall be filed under that miscellaneous docket number.  The Court will review each filing.  If the filing is found to be frivolous, no further action will be taken. If the filing states a claim that is not frivolous or does not fail to state a claim, the Court will direct the Clerk of Court to open a new civil matter in which the filing will be docketed, and the matter will proceed as a new case in the ordinary course. *E.g.*, *Mai v. NYSOTDA*, No. 25-MC-2840, 2025 WL 2947168, at *2 (E.D.N.Y. Aug. 20, 2025).